UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LEONARDO JESUS REYES RODRIGUEZ | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00005-JPH-MKK |
| | ) | |
| BRISON SWEARINGEN, | ) | |
| SAMUEL OLSEN, | ) | |
| TODD LYONS, | ) | |
| KRISTI NOEM, | ) | |
| PAMELA JO BONDI, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS
AND DIRECTING FURTHER PROCEEDINGS**

Petitioner Leonardo Jesus Reyes Rodriguez is detained at the Clay County Jail in Brazil, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He filed this writ of habeas corpus petition under 28 U.S.C. § 2241 seeking immediate release. Dkt. 1. Mr. Reyes Rodriguez argues that ICE unlawfully detained him while he was under Temporary Protected Status and continues to unlawfully hold him without an individualized determination that he is a flight risk or a danger to the community. *Id.*

For the reasons explained below, the Court **grants** the petition to the extent that **no later than 5:00 p.m. on January 16, 2026, Respondents must either**: (1) afford Mr. Reyes Rodriguez an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision.

1

I.     **Background**

On February 24, 2023, Mr. Reyes Rodriguez lawfully entered the United States at the Miami-Dade Airport Port of Entry using his Venezuelan passport and the Travel Authorization Document that DHS issued to him pursuant to the Venezuelan Parole Program. Dkt. 1 at 9. A Customs and Border Patrol officer inspected and paroled Mr. Reyes Rodriguez and subsequently issued him an I-94 record of entry. Dkt. 1-2. Mr. Reyes Rodriguez applied for Temporary Protected Status ("TPS") on October 19, 2023, and his application was granted on February 12, 2024. Dkt. 1 at 9. His most recent I-94, which serves as proof of TPS registration, has been valid since February 12, 2024. *See* dkt. 1-2. On December 9, 2025, Petitioner was arrested by ICE agents. Dkt. 1 at 10.

On December 10, 2025, the Department of Homeland Security served Mr. Reyes Rodrigues an I-200 Warrant for Arrest of Alien and issued him a "Notice to Appear," placing him in removal proceedings under section 240 of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1229(a)] before the Chicago Immigration Court. Dkt. 9-1 at 2, 6. The Notice to Appear charges Mr. Reyes Rodriguez with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General" and 8 U.S.C. § 1182 a(7)(A)(i)(I) as "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity

2

and nationality if such document is required under the regulations issued by the Attorney General under section 211(a) of the Act." *Id.* at 5. The "arriving alien" checkbox is unmarked. *Id.* at 2.

On December 22, counsel for Mr. Reyes Rodriguez filed a written motion for release on bond, which the immigration court heard the following day. Dkt. 1 at 11. On December 23, an Immigration Judge advised counsel to withdraw the request for release on bond, citing lack of jurisdiction due to Mr. Reyes Rodriguez's "unlawful entry and presence in the United States." *Id.* at 11; *see* dkt. 1-5 (showing motion withdrawn).

At some point, Mr. Reyes Rodriguez was transferred to the Clay County Jail, where he is currently detained. Dkt. 1 at 11.

Mr. Reyes Rodriguez argues that his current detention violates the INA because his TPS does not permit detention and because the government is holding him in mandatory detention (Counts I and II), violates the Administrative Procedure Act (Count III), and violates the Due Process Clause of the Fifth Amendment (Count IV). Dkt. 1 at 27-31. Respondents argue that Mr. Reyes Rodriguez's petition is premature; that his TPS expired prior to his arrest and detention; that he is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, he is lawfully detained under the INA pursuant to 8 U.S.C. § 1226(a) because he will have the opportunity to receive a hearing; and that his detention is constitutional. Dkt. 9.

The Court finds that Mr. Reyes Rodriguez's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded a bond

3

hearing. Because Mr. Reyes Rodriguez is entitled to habeas corpus relief on these grounds, the Court does not address his other arguments.

## II. Exhaustion

Respondents argue that Mr. Reyes Rodriguez's claims are premature because he has not sought relief before an Immigration Judge or the Board of Immigration Appeals ("BIA"). Dkt. 9 at 11-13. Mr. Reyes Rodriguez argues that any attempt to exhaust his administrative remedies would be futile. Dkt. 12 at 7-9.

There is no statutory requirement that Petitioner move for a bond hearing before an immigration judge before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-

4

00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Petitioner was not required to exhaust administrative remedies because doing so would be futile.

### III.  Statutory Basis for Detention

8 U.S.C. § 1226 and § 1225 govern the detention and removal of aliens.[1] In general, § 1226 applies to aliens "already present in the United States," while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

#### A. Detention Pursuant to § 1226

Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an Immigration Judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>     (A) bond . . . ; or
>     (B) conditional parole . . . .

---

[1] The INA uses the term "alien" to refer to noncitizens, so the Court does too.

5

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the alien. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

### B. Mandatory Detention Pursuant to § 1225

In contrast, § 1225 governs "inspection by immigration officers." Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain aliens removed without further hearing or review unless the alien indicates an intention to apply for asylum. 8 U.S.C. § 1225(b)(1)(A)(i). This applies to aliens who have engaged in misrepresentation or have failed to meet document requirements under § 1182(a)(6)(C) or (a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, § 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for*

6

*admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). According to § 1225(a)(1), an "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)."

Unless the alien receives temporary parole under § 1182(d)(5)(A), "'there are no other circumstances under which aliens detained under [§] 1225(b) may be released.'" *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *11 (E.D.N.Y. Nov. 28, 2025) (quoting *Jennings*, 583 U.S. at 300). Accordingly, "[b]oth provisions mandate detention until a certain point and authorize release prior to that point only under limited circumstances." *Id.*

### C. Parole Under § 1182(d)(5)(A)

As seen above, an inadmissible alien who is subject to mandatory detention can be released on humanitarian parole under § 1182(d)(5)(A). This section provides that the Attorney General may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Parole is "not [to] be regarded as an admission of the alien[.]" *Id.* "[W]hen the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which

7

he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

According to 8 C.F.R. § 212.5(e)(1)(ii), humanitarian parole is automatically terminated "at the expiration of the time for which parole was authorized." At this point, the alien "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Moreover, "[a]ny further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless . . . the public interest requires that the alien be continued in custody." *Id.*

## IV. Analysis

Respondents do not argue that Mr. Reyes Rodriguez is detained pursuant to any subsection of § 1225(b)(1). Instead, Respondents claim that he is subject to § 1225(b)(2)(A) because his TPS expired on April 2, 2025, returning him to the status of "arriving alien." Dkt. 9 at 10-11, 14. Although Mr. Reyes Rodriguez claims that his TPS continued beyond April 2, the documents in the record do not show that he ever received an extension beyond that date. *See* dkt. 1-2 (I-94 showing admission and humanitarian parole through February 22, 2025); *see also* dkt. 1-3 (I-797A Notice of Action showing TPS through April 2, 2025).

8

Respondents' argument regarding mandatory detention, however, is premised on a faulty interpretation of both § 1225(b)(2)(A) and § 1182(d)(5)(A).

### A. 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i) Do Not Mandate Return to Physical Custody or Mandatory Detention

After parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). At no point, however, do Respondents explain how this provision mandates Petitioner's current detention without bond in Clay County Jail. The record shows, and Respondents do not dispute, that Mr. Reyes Rodriguez was inspected at a port of entry, received a stamp in his passport, *was never detained*, and entered the country on humanitarian parole.

Furthermore, "custody," and "detention" are different concepts. Interpreting § 1182(d)(5)(A), the court in *Qasemi v. Francis* explained:

> The law and the statute draw a distinction between "detention" and "custody." "Custody" does not necessarily mean physical custody. It concerns any status under which a person or thing is under "the care and control of [another] for inspection, preservation or security." Black's Law Dictionary 390 (7th ed. 1999). That contrasts with "detention" or "detain," which Congress uses frequently. When "custody" is intended to denote detention, it is preceded by the modifier "physical," or "in." For example, as the Supreme Court has held, an incarcerated person placed on parole is in the "custody" of the parole board, even if he is not subject to its "actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963). "Custody" used alone refers to "restraints on a man's liberty, restraints not shared by the public generally." *Id.*

2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Though *Qasemi* is not binding on this Court, its careful analysis of the key terms is persuasive. By "returning" to custody, Mr. Reyes Rodriguez must relinquish the freedoms that

9

he had under parole (i.e., lawful status, work authorization, public benefits, etc.). It does not mean that he must be detained without bond. Indeed, § 1182(d)(5)(A) does not "affirmatively authoriz[e] detention, much less indefinite detention." *Clark v. Martinez*, 543 U.S. 371, 385 (2005).

In other words, after his parole expired, the INA put Mr. Reyes Rodriguez back into the same position that he was in before he was granted parole. Nevertheless, "[t]he statute does not require the Court to pretend that [Petitioner] was never paroled and permitted to live freely in this country." *Qasemi*, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Respondents do not cite any language or principle that returns Mr. Reyes Rodriguez to his physical position at the port of entry in Miami in 2023. "A noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Id.*

This interpretation of "custody" is supported by the rest of the sentence, which provides that the alien "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). In other words, § 1182(d)(5)(A) suggests that after parole expires, the alien will be treated like any other unadmitted alien under the INA. *See Clark*, 543 U.S. at 386 (interpreting 1182(d)(5)(A) to subject the alien, who was subject to a final order of removal, to "[t]he manner in which the case of any other

applicant would be 'dealt with' beyond the 90–day removal period is prescribed by § 1231(a)(6), which we interpreted in *Zadvydas* and have interpreted above.").

The provisions of 8 C.F.R. § 212.5(e)(2)(i) do not alter this analysis. This regulation provides that upon expiration of humanitarian parole under Section 1182(d)(5)(A), the alien "shall be restored to the *status* that he or she had at the time of parole" and that "[a]ny further inspection or hearing [following expiration of parole] shall be conducted under section 235 or 240." 8 C.F.R. § 212.5(e)(1)–(2) (emphasis added). Once again, the first part of the sentence reiterates that return to "custody" does not necessarily entail mandatory detention. It entails a stripping of one's lawful status as a parolee. The second part of the sentence "appears to provide for either inspection under section 235 (which can then lead to either expedited or regular removal proceedings) or, if the parolee does not require any 'further inspection,' to section 240 proceedings." *Coalition For Humane Immigrant Rights v. Noem et al.*, 2025 WL 2192986, at *26 (D.D.C. Aug. 1, 2025). Parolees, therefore, will be dealt with either under Section 235 [8 U.S.C. § 1225] or Section 240 [8 U.S.C. § 1299a], or what are otherwise known as "full removal proceedings." Here, Petitioner's Notice to Appear explicitly places him in full removal proceedings under "Section 240" of the INA. *See* dkt. 9-1 at 2.

Neither provision requires Respondents to detain Mr. Reyes Rodriguez. Furthermore, instead of returning Mr. Reyes Rodriguez back to his position as an "arriving alien" at the port of entry in Miami, the provisions strip him of his parolee status and mandate that he be treated like any other "applicant for

11

admission." Thus, the next question concerns whether Mr. Reyes Rodriguez's detention is authorized by § 1225(b)(2)(A) or § 1226(a).

### B. Section 1225(b)(2)(A) Does Not Apply to Mr. Reyes Rodriguez

As seen above, § 1225(b)(2)(A) has three criteria. An alien "shall be detained," who is "an *applicant for admission,* if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

The face of the statute allows the Court to infer that Mr. Reyes Rodriguez fits the description of an "applicant for admission." As seen above, § 1225(a)(1) defines as applicant for admission as any unadmitted alien, which tracks with §1101's definition of "application for admission" as referring to "application for admission into the United States," and not application for a specific visa. Also, because Mr. Reyes Rodriguez has been served with a Notice to Appear, it is evident that he is not "clearly and beyond a doubt entitled to be admitted." Nevertheless, Respondents' argument that he fits the third criterion of "seeking admission" into the United States is not well-taken because "seeking admission" cannot be read as synonymous with "applicant for admission" without violating the rule against surplusage. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."). "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Bilski v. Kappos,* 561 U.S. 593, 607–08, 130 (2010)); *see also id.*

(disagreeing with the construction of § 1225(b)(2)(A) that interprets "applicant for admission" as synonymous with "seeking admission" because, in addition to violating the rule against surplusage, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.' 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are 'seeking admission' within the definition but elected not to do so.").

The Department of Homeland Security's implementing regulations generally treat "arriving alien" and "seeking admission" as interchangeable. *See, e.g., Tumba v. Francis*, 2025 WL 3079014, at *4 (S.D.N.Y. Nov. 4, 2025). Thus, if Mr. Reyes Rodriguez is an "arriving alien," as Respondents contend, then he is also "seeking admission." Even still, as seen above, § 1182(d)(5)(A) and its regulations removed Mr. Reyes Rodriguez's legal status after his humanitarian parole expired, they did not necessarily return him to the theoretical position of an "arriving alien" at a port of entry. Therefore, "Petitioner shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Moreover, within the context of § 1225(b)(2)(A), Mr. Reyes Rodriguez cannot be said to be "arriving" or "seeking admission" after having been inspected at the border in 2023, paroled, and then residing within the United States ever since.

"Arriving" and "seeking admission" are not defined within the statute. Therefore, the Court turns to the plain meaning of the terms. *See Encino*

13

*Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text). Addressing the same statutory provisions, the court in *Coalition for Humane Immigrant Rights v. Noem* explained that "'[a]rrive' means 'to reach a destination' or 'to make an appearance.'" 2025 WL 2192986 at *28 (quoting *Arrive*, Merriam Webster's Collegiate Dictionary (1996)). The gerund tense "arriv*ing*" connotes process or actively working towards reaching a destination. Thus, an alien "arriving" in the United States is in the "process of reaching his or her destination (the United States) and making an appearance here." *Id.* It does not make common sense to interpret "arriving alien" as referring to Mr. Reyes Rodriguez, "who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States (beyond [his] original destination) for an indefinite period of time." *Id.*; *see Rodriguez-Acurio*, 2025 WL 3314420, at *20 ("The words 'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival.") (internal citation omitted).

Even the Notice to Appear leaves the "arriving alien" box unchecked. *See* dkt. 9-1 at 2. Mr. Reyes Rodriguez does not contest that he was, in fact, an "arriving alien" when he arrived in 2023, but that the designation no longer applies. The designation must be weighed against the fact that he was arrested pursuant to a warrant that explicitly invokes § 1226. *See* dkt. 9-1 at 6. The text of § 1226 authorizes the arrest and detention of aliens with a warrant—§ 1225

14

does not contain any language about warrants. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). Furthermore, taking the Notice to Appear at face value, Mr. Reyes Rodriguez would have to be arrested pursuant to § 1225(b)(1)(A)(i) because he is charged with inadmissibility under § 1182(a)(7)(A)(i)(I). *See* § 1225(b)(1) ("If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order . . ."). However, as mentioned above, Respondents do not make this argument, and the record does not show that Mr. Reyes Rodriguez is currently in expedited removal proceedings.

Mr. Reyes Rodriguez is not "seeking admission" into the United States. Similar to "arriving," "seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As other courts have explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies

15

action'" and "those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are just 'present' in the country—who have been here for years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission."). Mr. Reyes Rodriguez is plainly not "seeking admission." He has already been inspected at a port of entry and granted parole, which has now expired. Aliens such as Mr. Reyes Rodriguez are "seeking to remain in the United States" not seeking admission. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."). The fact that Mr. Reyes Rodriguez does not fit into the third criterion, "seeking admission," or its correlate "arriving alien," supports the conclusion that § 1225(b)(2) does not apply to him.

In addition, Respondents' application of 1225(b)(2) to Mr. Reyes Rodriguez does not make sense within § 1225 as a whole. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and it repeatedly refers to "inspection" throughout. Though not defined in the statute, regulations for "Inspection of Persons Applying for

16

Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S.-Canada border or a port of entry, such as an airport. *See* 8 C.F.R. § 235.1(f) *et seq* (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border port-of-entry" throughout). However, as another district court faced with a similar habeas petition pointed out, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired." *Walizada v. Trump*, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025). Thus, § 1225(b) applies to "individuals who are seeking entry into the United States, not people living here." *Id.*

Faced with similar facts, courts around the country have similarly found that people whose humanitarian parole has expired are not lawfully detained under § 1225(b)(2). *See Z.G. v. Olson, et al.*, No. 2:25-cv-00584-MPB-MKK, at dkt. 23 (S.D. Ind. Jan. 9, 2026); *Qasemi*, 2025 WL 3654098, at *1; *Walizada*, 2025 WL 3551972, at *1; *Rodriguez-Acurio*, 2025 WL 3314420, at *1; *Mohammadi v. Larose*, 2025 WL 3731737, at *4 (S.D. Cal. Dec. 26, 2025). This Court finds the reasoning in these cases persuasive and finds that § 1225(b)(2) does not apply to Petitioner.

### C. Mr. Reyes Rodriguez is Detained Under § 1226(a)

As seen above, § 1226 pertains to the "[a]pprehension and detention of aliens," and it authorizes the Attorney General to issue a warrant to arrest and detain an alien during removal proceedings. Federal regulations provide that

aliens detained under § 1226(a) receive bond hearings. *See* 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). The plain language suggests that § 1226—not § 1225—applies to Mr. Reyes Rodriguez because he is an "alien" who was "apprehended" and "detained."

Respondents argue in the alternative that Mr. Reyes Rodriguez is lawfully detained under § 1226 because he has an opportunity to receive a bond hearing before an Immigration Judge. Dkt. 12 at 12-13. Thus, this Court cannot review the Immigration Judge's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Mr. Reyes Rodriguez has an opportunity to receive a bond hearing where the Immigration Judge would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1). As discussed above, under BIA precedent, an Immigration Judge does not have jurisdiction to consider bond on the merits, and an Immigration Judge has already advised Mr. Reyes Rodriguez's counsel of these jurisdictional limitations. Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents' case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a

18

decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17.

In sum, Mr. Reyes Rodriguez's detention without opportunity to request a bond hearing from an Immigration Judge who will individually determine his eligibility for bond pursuant to § 1226(a) violates the INA. He is thus entitled to habeas relief because his continued detention violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## V.   Scope of Relief

Mr. Reyes Rodriguez requests immediate release from custody. Dkt. 1 at 32. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). The appropriate relief for Mr. Reyes Rodriguez is a bond hearing—not immediate release. He maintains—and the Court agrees—that he is subject to § 1226. Mr. Reyes Rodriguez's custody is unlawful because the government refuses to consider whether he may be released as the law requires.

## VI.   Conclusion

The Court **grants** the petition to the extent that **no later than 5:00 p.m. on January 16, 2026, Respondents must either**: (1) provide Mr. Reyes Rodriguez with an individualized bond hearing before an immigration judge

pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision. No later than **5:00 p.m. on January 20, 2026,** Respondents must file a notice with the Court certifying that they have complied with the Court's order. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 1/13/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-Registered Counsel of Record